**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CIVIL ACTION No. _1:25-cv-153-GNS_**
**JUDGE _____**

**MATTHEW SCOTT CENTERS AND**
**GARNETT L. CENTERS**                                    **PLAINTIFFS**

**VS.**

**R-S ENERGY, INC., CECIL LANE**
**AND C-L PURCHASING, INC.**                          **DEFENDANTS**

**COMPLAINT FOR DECLARATION OF RIGHTS, DAMAGES AND**
**INJUNCTIVE RELIEF**

**INTRODUCTION**

1. This case involves the purchase of two parcels of real estate in Cumberland County by the Plaintiffs upon which the Defendants claim are subject to a 1938 oil and gas lease and/or a 2015 Development Agreement affecting their right to produce oil from the Plaintiffs' property.

2. While there has been a history of several wells that were drilled approximately sixty (60) years ago on a portion of the 1938 oil and gas lease that at one time covered 360 acres of property in Cumberland County, a portion of which the Plaintiffs derive their title therefrom, all but one of the those  wells have been previously abandoned and do not produce sufficient oil that require the 360 acre lease to remain in full force and effect, and the one well that has produced from time to time, only produces oil sporadically, and from which the Plaintiffs have only received four (4)

royalty checks in the last two (2) years totaling less than eleven hundred dollars ($1,100.00).

3. Accordingly, and pursuant to the habendum clause in the 1938 oil and gas lease, a copy of which is annexed as Exhibit 1 to this Complaint, such lease has terminated due to the Lessee, or its Assignees, the Defendants herein, not having produced oil of sufficient quantity to require such lease to remain in full force and effect as defined under Kentucky Law.

4. The Cumberland Circuit Court in Case No. 12-CI-00019, a lawsuit styled Barbara Helen Jacobs, Plaintiff, v. Central Dallas Energy Management Services, Inc. et al, as Defendants, has previously entered an Order in August of 2012 that the oil and gas lease in Exhibit 1 affecting several of the parcels of property compromising the 360 acre oil and gas lease filed of record in Lease Book 15 at page 191 in the Cumberland County Court Clerk's Office had terminated by its own terms, either due to lack of production, or abandonment of wells that at one time had been productive, but that the Court would allow an attempt by the current operator, the Defendant R-S Energy, Inc., to develop the remainder of the undeveloped portion of the 360 acre oil and gas lease property under the terms of a Developmental Agreement dated August 10, 2015. A copy of such is attached as Exhibit 2 to this Complaint. Said Development Agreement was executed by the then property owner Barbara Jacobs, and the then operator, R-S Energy, Inc., who was acting on behalf of the 2015 working interest owner of said 360 acre, lease, for said operator to abide by the terms of said

Development Agreement, as well as abiding by the terms of the existing oil and gas lease filed of record in Lease Book 15 at page 191 in Cumberland County that affected the undeveloped acreage. Said operator R-S Energy, Inc. did not abide by such terms because it did not apply for a permit to drill any new well; nor did it undertake any attempt to drill a new well which led to successful production of a minimum of two (2) barrels of oil per day; nor did said operator comply with the existing regulations of the Department of Mines and Mineral in the Commonwealth of Kentucky for plugging any wells that had been abandoned; nor did said operator provide the landowners with run tickets within ten (10) days from the date that any load of oil was picked up from such property; nor did said operator put all electric lines in tubing or comply with the appropriate electrical codes for any electric lines utilized in the operations; nor did the operator plug any well that it had attempted to operate and which it later had ceased operations for production of oil for sixty (60) consecutive days.

5. The Plaintiffs have received four (4) minuscule checks alleging that oil has been produced on a portion of their property from one (1) well from the Defendant C-L Purchasing, Inc., even though the Plaintiffs have received no run tickets to determine that the oil was in fact produced from a well on their property. Furthermore, the Plaintiffs deem that even if such oil was produced from their property from an existing well, it is not sufficient enough of a landowner royalty to justify the continuation of the remainder of the 360 acre oil and gas lease placing a cloud on their title.

6. The Plaintiffs have sought the Defendants to execute a waiver of any interest in the Development Agreement referred to hereinabove that might affect a portion of the Plaintiffs' property that was entered into August 10, 2015 and to execute a termination of the Eva Rush 360 acre oil and gas lease that was originally executed in 1938 in favor of AG Greenup that is filed of record in Lease Book 15 at page 191 in the Cumberland County Court Clerk's Office, but said Defendants have refused.

## PARTIES

7. The Plaintiffs Matthew Scott Centers and Garnett L. Centers currently reside at 928 Shawhan Road, Morrow, Ohio 45152 and they are the lawful owners of two (2) parcels of real estate located in Cumberland County, Kentucky, with parcel 1 consisting of 201.19 acres in the Bow Community of Cumberland County; and parcel 2 consisting of 2.16 acres in the Bow Community of Cumberland County, both being purchased from Barbara Rush Jacobs, a single individual, on April 29, 2024 by a Deed filed of record in Deed Book 193 at pages 35-41 in the Cumberland County Court Clerk's Office.

8. The Defendant R-S Energy, Inc. is named as Defendant in this action by virtue of that Development Agreement that it executed with Barbara Jacobs on July 20, 2015 and which was adopted and approved by the Cumberland Circuit Court in Civil Action 12-CI-019. Such entity is not registered to do business in the Commonwealth of Kentucky under the name R-S Energy, Inc. but such Development Agreement was executed on July 20, 2015 by

Cecil Lane, who held himself out to be the President of such fictitious entity, and therefore such entity may be served by serving Cecil Lane, whose address is 541 Pine Crest Road, Lancaster, Kentucky 40444.

9. The Defendant C-L Purchasing, Inc. is listed as a corporation in bad standing with the Kentucky Secretary of State and its certificate of authority to conduct business in the Commonwealth of Kentucky has been revoked. Its former agent for service of process was listed as Cecil Lane whose address is 541 Pine Crest Road, Lancaster, Kentucky 40444. C-L Purchasing, Inc. is the alleged entity that has been purchasing oil allegedly produced from a well located on property owned by the Plaintiffs herein.

10. The Defendant R&S Energy is likewise not registered to do business under that name in the Commonwealth of Kentucky nor is it registered with the Kentucky Secretary of State under that name. It is assumed to be one in the same entity as the fictitious R-S Energy, Inc., and it may be served by serving its agent Cecil Lane, whose address is 541 Pine Crest Road, Lancaster, Kentucky 40444. Such entity allegedly received an assignment of all of the right, title and interest in the Eva Rush 360 acre lease, which is the same lease filed of record in Lease Book 15 at page 191 in the Cumberland County Court Clerk's Office that is the subject matter of this action, by virtue of that assignment dated June 26, 2015 and filed of record in Lease Book 69 at page 323 in the Cumberland County Court Clerk's Office. Such assignment of leasehold rights was specifically subject to such entity complying with the rules and regulations of the Department of Mines

and Mineral of the Commonwealth of Kentucky in the event that it was to operate any wells located on such 360 acre leasehold estate, and was further subject to it complying with any orders entered by Cumberland Circuit Court in 12-CI-00019, including but not limited to the adoption of the Development Agreement for any future operations of the undeveloped acreage of the Eva Rush 360 acre lease in Cumberland County that was the subject of such litigation.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1332 because the parties are citizens of different States and the matter in controversy exceeds $75,000.00, excluding interest and cost.

12. Specifically, the Plaintiffs are citizens of the State of Ohio and the Defendants are citizens of Kentucky.

13. Additionally, the Defendants are using the alleged oil and gas leasehold rights under the 360 acre oil and gas lease to cloud the title to the Plaintiffs' surface rights, the value of which has a market value in excess of the jurisdictional minimum of this Court.

14. The property in question is located in this District and the Defendants, even though currently not entities in good standing with the Kentucky Secretary of State, or are fictitious entities, have either transacted business in this District or they are attempting to do so.

15. This Court is the proper venue for this action pursuant to 28 U.S.C. Section 1391 (a)(b)(c) because the Defendants have conducted business in this

District; and a substantial portion of the events or omission giving rise to the claims of the Plaintiffs have occurred in this District; the property that is the subject matter of this action is located in this District; and the Plaintiffs have been injured in this District.

## **FACTUAL BACKGROUND**

16. When the Plaintiffs entered into a contract to purchase the real estate in question from Barbara Rush Jacobs on or about April 17, 2024 it contained a provision that the Plaintiffs would have the first right to purchase an oil lease from Cecil Lane. Such provision in said contract did not identify what area of the property, if any, was subject to such an oil and gas lease or how the Defendant Cecil Lane obtained such oil and gas lease.

17. The real estate purchased by the Plaintiffs from Barbara Rush Jacobs on April 29, 2024 traces it source of title back to Deed Book 49 at page 177, Deed Book 49 at page 179, and Deed Book 63 at page 581, all of record in the Cumberland County Court Clerk's Office. The real estate described in those Deeds were part of the 360 acre oil and gas lease that was granted to AG Greenup by Eva Rush, Claude Rush, Clayton Rush, Clarence Rush, and Hazel Rush on December 12, 1938 and filed of record in Lease Book 15 at page 191 in the Cumberland County Court Clerk's Office. Said oil and gas lease had a duration of 2 years and as long thereafter as oil and gas was produced.

18. On the information and belief of the Plaintiffs, whatever wells that may have been drilled by either AG Greenup, or his successors or assigns in

interest to such oil and gas lease, since 1938, were drilled over sixty (60) years ago, but most of those wells have been abandoned and were not producing any oil by the time that the predecessor in title to the Plaintiffs, Barbara Jacobs, filed a complaint seeking to declare the AG Greenup oil and gas lease invalid in the lawsuit filed in Cumberland Circuit Court in 12-CI-00019 in March of 2012. As of the time of such lawsuit, there was only one (1) well still producing, and the remaining wells had been abandoned and the Plaintiffs' predecessor in title sought the termination of such oil and gas lease for non-production and for the lessee's failure to comply with the terms of the habendum clause in such oil and gas lease.

19. One of the Defendants in the Cumberland Circuit Court civil action 12-CI-00019, identified as R&S Energy, in an attempt to declare that the Eva Rush 360 acre lease dated December 12, 1938 and filed in Lease Book 15 at page 191 in the Cumberland County Court Clerk's Office remained in full force and effect, produced an assignment from Fucco, LLC dated June 26, 2015 claiming that said entity then owned the entirety of the working interest in such oil and gas lease, and in addition thereto, it had allowed the Defendant R-S Energy, Inc. in this lawsuit to become the operator of such 1938 lease. R-S Energy, Inc., was a named party to a Development Agreement dated August 10, 2015 with the Plaintiffs predecessor in title Barbara Jacobs, and through its duly authorized president Cecil Lane, agreed to attempt to further develop the undeveloped acreage of the Eva Rush 360 acre lease in accordance with terms set forth in in such Development Agreement. Based

upon the execution and entry of same, the Cumberland Circuit Court in Civil Action 12-CI-00019 dismissed a portion of the remaining Complaint that sought to terminate the remaining portions of the Eva Rush 360 acre lease that had not been developed if the Defendant R-S Energy, Inc., complied with the terms of the Development Agreement. However, based upon the information and belief of the Plaintiffs, the Defendant R-S Energy, Inc. has failed to comply with the terms of the Development Agreement in that it did not apply for or receive a permit to drill any new well locations on that portion of the lease within one (1) year from the date thereof; therefore forfeiting its right to drill any new wells on the undeveloped acreage and terminating that portion of the Eva Rush 360 acre lease that has been undeveloped; nor did such Defendant obtain production of oil in a minimum of two (2) barrels per day, which would allow that portion of the Eva Rush 360 acre lease that had not previously been terminated to continue; nor did such Defendant provide copies of any run tickets to Barbara Jacobs, or the Plaintiffs, who are the successor landowners, within ten (10) days from any alleged oil being picked up from such lease; nor did the Defendant permit any well in its name; nor did the Defendant place the electrical lines in tubing and properly maintain and meet all appropriate electrical codes; nor did the Defendant plug any wells that it had drilled or operated that was deemed at a later date to be a dry hole; nor did the Defendant restore the area surrounding an well that it had drilled and/or operated to its previous condition.

## **WELL LOCATIONS AFFECTING PLAINTIFFS' PROPERTY**

20. To the best knowledge and belief of the Plaintiffs, the only two (2) wells located on their property that were permitted and drilled on any portion of the Eva Rush 360 acre oil and gas lease consist of permit number 14291 which was identified as well 12 on the Eva Rush heirs farm in Cumberland County that was commenced on June 24, 1965 and completed on July 7, 1965 and listed WC Cates as the operator. This well has not been transferred through the bond of any of the Defendants named herein and to the best knowledge and belief of the Plaintiffs, the well at best has produced sporadic quantities of oil. The Plaintiffs have not received any run tickets to determine if oil has actually been produced from this well on their property, but they have received a check dated January 27, 2025 in the amount of $351.72 for 64.87 barrels of oil allegedly sold on December 20, 2024; a check dated August 30, 2024 in the amount of $422.77 for an alleged 64.75 barrels of oil picked up on July 20, 2024; a check dated May 23, 2025 for alleged 65.11 barrels of oil picked up on April 20, 2025; and a check dated September 25, 2025 in the amount of $344.87 for an alleged 55.32 barrels of oil sold on August 20, 2025.

21. There was a second well allegedly drilled on the Eva Rush 360 acre lease and identified as the Rush well 13 under permit number 20989 that was commenced on July 4, 1968 and completed on July 26, 1968 which identified Mrs. Roxie W. Cates as the operator. There has been no transfer of this well under the bond of any Defendant identified herein, nor have the

Plaintiffs received any payment of royalties for any alleged production of oil from this well, and to the best of their knowledge and belief this well has been abandoned and needs to be plugged by the Defendants.

22. There was an additional third well that was allegedly drilled under permit number 6703 in which the Plaintiff have received no information from either the Defendants, or from the Division of Oil and Gas as to when such well was permitted, when such well was drilled and completed, and whether such well has produced any oil in paying quantities. However, the Plaintiffs allege that to the best of their knowledge and belief there has been no production of oil from any well drilled under permit number 6703 since their acquisition of the two (2) parcels of 203.35 acres from Barbara Rush Jacobs on April 29, 2024.

23. Based upon the information and belief of the Plaintiffs, the Defendants' drilling activities on the remainder of the Eva Rush 360 acre lease not previously terminated by the Cumberland Circuit Court in Civil Action 12-CI-019 on August 24, 2012 did not comply with the Defendants' covenant to develop the undeveloped acreage of the Eva Rush 360 acre lease, of which a portion thereof encompasses the Plaintiffs property, because said Defendants have not produced sufficient oil in paying quantities to justify the continuation of such oil and gas lease and any amount of oil allegedly produced is definitely insufficient to compensate the Plaintiffs for the inconvenience of the Defendants' occupancy and operations on their property.

24. Consequently, by the terms of both the 1938 oil and gas lease and the 2015 Development Agreement, the remainder of the Eva Rush 360 acre oil and gas lease has terminated.

**CAUSES OF ACTION**

**COUNT 1- TERMINTATION OF LEASE**

25. The Plaintiffs allege that the Eva Rush 360 acre oil and gas lease, or at least that portion that encompasses the Plaintiffs' property, dated December 12, 1938 from Eva Rush, Claude Rush, Clayton Rush, Clarence Rush and Hazel Rush to AG Greenup, which had an initial term of two years and as long thereafter as oil and gas is produced has expired by its own terms and through the inability of the Defendants to produce oil or gas in quantities such that more than mere nominal or token royalties have been paid to the Plaintiffs under the terms of such lease.

26. Furthermore, the Plaintiffs allege that the royalties that have been paid to them by the Defendant C-L Purchasing, Inc. have not been large enough in quantity to compensate them for the inconvenience of the Defendants' occupancy through any alleged conducting of oil operations on their property.

27. Based upon the information and belief of the Plaintiffs, the Defendants have not produced sufficient quantities of oil to satisfy the habendum clause of said Eva Rush oil and gas lease and therefore the lease has terminated according to its own terms.

28. The Plaintiffs further allege based upon their information and belief that any well on their property that may be allegedly producing quantities of oil were not drilled by any of these Defendants, and are not being currently operated by the Defendants under their bond, nor do they constitute wells that were drilled by the Defendants under the Development Agreement dated August 10, 2015 between Barbara Jacobs, the predecessor in title to the Plaintiffs, and the Defendant R-S Energy, Inc., who was the successor in interest to the prior oil and gas Lessee of the Eva Rush 360 acre lease, and under paragraph six (6) of such Development Agreement, a successful well would be deemed to be a well that would achieve production of a minimum of 2 barrels of oil per day, which has not been produced by the Defendants, nor are there any wells on the Plaintiffs' property capable of producing such quantity of oil, therefore this lease should terminate as a matter of law.

29. The Plaintiffs seek a Declaration from this Court that the Eva Rush 360 acre oil and gas lease has terminated, and that the Development Agreement that allowed for the continuation of the operation of any well or wells on the Eva Rush 360 acre lease that was owned by Barbara Jacobs in 2012, and which has subsequently been sold to the Plaintiffs in 2024, has not been complied with, and that any sums that have been paid to the Plaintiffs by the Defendant C&L Purchasing, Inc. in an effort to try and persuade this Court that it is complying with the terms of the Eva Rush 360 acre oil and gas lease is not sufficient enough to compensate the Plaintiffs for the inconvenience of the Defendants' occupancy and operation on their

property, and therefore for such reason the Plaintiffs seek a ruling by this Court that all rights under either the oil and gas lease or the Development Agreement have been extinguished.

## COUNT 2 – THE UNDEVELOPED ACREAGE OF THE EVA RUSH 360 ACRE LEASE THAT ENCOMPASSES THE PLAINTIFFS' PROPERTY REQUIRE SAME TO BE TERMINATED AND CANCELLED

30. Pleading in the alternative to Count 1 hereinabove, if the remainder of the Eva Rush 360 acre lease that was not terminated in Cumberland Circuit Court action 12-CI-00019 that applies to the Plaintiffs' property is not terminated under its own terms, then in the alternative, the Plaintiffs request that this Court reach a determination that none of the Defendants may be able to apply for any permits to drill additional wells on the Plaintiffs' property or attempt to reopen wells that have previously been drilled and deemed either abandoned or unproductive in an effort to derive any oil production therefrom. KRS 353.595 (5) clearly requires a prohibition of oil and gas operators from utilizing anymore of the surface estate than is reasonably necessary for the exploration, production, or development of the mineral estate. The Defendants have failed in the past ten (10) years that they either had rights under the 1938 oil and gas lease to produce oil, or rights under the Development Agreement to further develop the undeveloped acreage of the 360 acre Eva Rush oil and gas lease that applied to the Plaintiff's property, but they clearly failed to do so, and therefore the Defendants have violated their duty of due diligence that would be

reasonably expected of an operator to exercise ordinary prudence in the production of oil from such leasehold estate. Therefore, the Plaintiffs request that this Court declare that any portion of the Eva Rush 360 acre oil and gas lease be terminated for non-production, except for a reasonable amount acreage around an established producing well, and then, only to the effect that the Defendants have established in this Court that they have achieved and will continue to achieve producing sufficient oil from such well in paying quantities, and that such well will be bonded to the Defendants, and they will adhere to all reasonable operational duties required of an operator in accordance with the terms of the original oil and gas lease, the Development Agreement, and the rules and regulations of the Division of Oil and Gas for the Commonwealth of Kentucky.

## COUNT 3 - WASTE

31. Alternatively, if the Eva Rush 360 acre lease has not already terminated and the Defendants' rights thereunder have not already been extinguished, the Defendants' conduct and use of the property as described herein is not in good faith and is unreasonably interfering with the Plaintiffs' ownership of their property.

32. Ten (10) years after the date of the Development Agreement that the Defendant R-S Energy, Inc. entered into with the Plaintiffs' predecessor in title to further explore and drill for an extraction of oil and gas from the undeveloped acreage on this property, such Defendant has failed to produce oil from any new well or wells.

33. The Defendants have failed to properly clean up the property, plug the abandoned wells on the property, bury flow lines below plow depth, and otherwise remove personal property not being utilized by said Defendants in their operation of the surface of the property, therefore unreasonably interfering with the Plaintiffs' ownership of such property.

34. The Plaintiffs reached out to the Defendant C&L Purchasing, Inc. after their acquisition of the surface rights to this property and attempted to seek a voluntarily termination of the Eva Rush 360 acre oil and gas lease that such Defendants claim they have an ownership interest in, or the extinguishment of the Development Agreement that R-S Energy, Inc. is supposed to comply with as part of the settlement of the lawsuit that was then pending in 12-CI-00019 Cumberland Circuit Court as referred to hereinabove. Such Defendants failed and refused to comply with such request.

35. The Plaintiffs do not have sufficient knowledge to determine if the Defendants are actually producing oil from one (1) existing well on their property, or simply sending a check on an occasional basis to the Plaintiffs claiming that oil was extracted from such well, but in either event, the Defendants have wrongfully and unjustifiably claimed that they were extracting oil from the Plaintiffs property, and such has caused damage to the Plaintiffs in that they cannot utilize this portion of their property that they clearly own to their benefit.

36. Such actions of the Defendants are wrongful and unjustifiable efforts to allegedly extract oil from the Plaintiffs' property and constitutes waste

under Kentucky Common Law and therefore such rights to the Defendants should be extinguished by this Court in favor of the Plaintiffs.

37. The Defendants' continued actions of waste have caused the Plaintiffs to suffer damages in excess of the jurisdictional minimum of this Court in that it is clearly precluding the Plaintiffs from either selling that portion of their property in which the oil activity is allegedly taking place on, or in the alternative, developing it for agriculture purposes, hunting purposes, or any other purposes that have marketable value, all of which will exceed the minimum jurisdictional requirements of this Court.

## COUNT 4 – BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

38. Pleading in the alternative, the Plaintiffs allege that if the Eva Rush 360 acre lease and Development Agreement has not already terminated and the Defendants' rights thereunder have not already been extinguished, then such lease constitutes a contract between the Plaintiffs and the Defendants.

39. Within every contract, there is an implied duty of good faith and fair dealing.

40. The Defendants' conduct and use of the Plaintiffs' property as described hereinabove is not in good faith and is unreasonably interfering with the Plaintiffs' ownership of such property.

41. The Defendants' wrongful and unjustifiable efforts to extract oil from the property are not necessary and are an unreasonable use of the property, and are unreasonably interfering with the Plaintiffs' ownership of the property.

42. Even if minimal royalties are paid to the Plaintiffs as a result of the Defendants' operation activities for a well they did not drill, such royalties are not sufficient to compensate the Plaintiffs for the inconvenience of the Defendants' occupancy and operations on their property.

43. The Defendants' conduct and use of the property as described herein, including the Defendants' wrongful and unjustifiable efforts to obstruct the Plaintiffs' anticipated improvements to that area of the property that the Defendants alleged production of oil takes place constitutes a breach of duty of good faith and fair dealing implied in the Eva Rush 360 acre oil lease and/or the Development Agreement.

44. As a result of the Defendants' breach of duty of good faith and fair dealing the Court should declare that the Eva Rush 360 acre lease is terminated and that any and all rights granted thereunder have been extinguished.

45. The Plaintiffs allege that they are entitled to damages, including punitive damages, to be awarded against the Defendants for their breach of duty of good faith and fair dealing, in an amount which would exceed the minimum jurisdictional requirements of this Court.

## COUNT 5 – ACCOUNTING

46. The Defendants were obligated under the 1938 Eva Rush oil and gas lease and the 2015 Development Agreement to abide by their duties under such contracts and to account for the production of oil and royalty payments to the landowners, which in this case would be the Plaintiffs.

47.  Administrative regulation 805 KAR 1:180 establishes a comprehensive production reporting requirement for any oil and gas operator which requires operators to compile and retain records of monthly production of oil or gas and to file such production information with the Division of Oil and Gas by April 15th of each year as well as to mandate that operators report net sales of such oil and who the oil was sold to. Such information includes, but is in no way limited to, the year of production, the permit number which the oil was produced, the purchaser number, the number of wells on the lease or farm and the status of such wells.

48. The Defendants in this case have breached such duties owed for accounting to the Plaintiffs in that they have not filed any reports that are necessary to comply with 805 KAR 1:180 with the Division of Oil and Gas as identified hereinabove; nor have they provided any run tickets to the Plaintiffs which would identify from which well or wells any oil was allegedly produced, when it was produced, the quantity that was sold, to whom it was sold, and when it was sold and at what price.

49. Based upon the information and belief of the Plaintiffs, the Defendants in this case have not obtained production of oil from any well or wells on their property, but instead has simply been creating a fictitious number of barrels of oil allegedly produced from a well or wells on their property, and then creating another fictitious amount that the oil was sold for, and thus paying an alleged net royalty Payment to the Plaintiffs for oil that was not produced from their property.

50. The Plaintiffs have previously requested the Defendants Cecil Lane and C-L Purchasing, Inc. to provide them records that would satisfy the requirements of 805 KAR 1:180 and which would satisfy the requirements under the terms of the Development Agreement, but with the exception of four (4) checks that have been provided only stating an amount, no such records have been provided. A review of such checks would lead the Plaintiffs to believe that the Defendants have not correctly reported any volumes of oil that may or may not have been produced from wells on their property nor have there have been any independent records provided from the purchaser to verify the quantity that was picked up from wells on the Plaintiffs' property and the amount that was paid for such oil when allegedly picked up.

51. The Plaintiffs, based upon what little information they have obtained to date from the Defendants, have no way of verifying the period of time any oil was allegedly produced from their property, from which well or wells, who it was picked up by, who it was sold to, what amount was sold, and for what price.

52. As a result of the above, the Plaintiffs allege that the Defendants have failed to comply with their contractual obligations for accounting, and as a result of such breach, the Plaintiffs have suffered damages in an amount which would exceed the minimum jurisdictional limits of this Court from oil that may have been produced, but was not accounted for, and certainly not paid

to the Plaintiffs in accordance with the terms of the oil and gas lease or the
Development Agreement in question.

53. Pleading in the alternative, the Defendants have breached their implied duty
to market whatever oil that may have been produced from the Plaintiffs'
property in a reasonable time and under reasonable terms. Based upon the
information and belief of the Plaintiffs at this date, the Defendants have
breached that implied duty because any alleged oil that was produced from
the property was sold to one of the Defendants' entities, C-L Purchasing,
rather than to a third party purchaser who has no relationship to the
Defendants in this case, under terms that may not have been reasonable or
at a marketable rate. As a result thereof, said Defendants have breached
their implied duty to market and sell any oil produced from the Plaintiffs
property in a correct amount and at the best and marketable rate available at
the time of production.

## COUNT 6 –FRADULENT MISREPRESENTATION

54. Based upon the information and belief of the Plaintiffs at this time, the
Plaintiffs allege that the Defendants have fraudulently misrepresented to the
Plaintiffs that they have produced oil from a well or wells on the Plaintiffs'
property and/or have misrepresented the quantity of oil that has been
produced, if any, the time period it was produced, and to whom it was sold.

55. The Defendants have failed to provide the Plaintiffs with any run tickets in
which oil was picked up from their property that was allegedly produced
from a well or wells on their property, nor have they received any

production records that are required to be maintained by the operator, R-S Energy, Inc., nor has the Defendant R-S Energy, Inc. reported the production of oil from any well or wells on the Plaintiffs' property to the Division of Oil and Gas by April 15th of the year after the oil was produced.

56. The only records that the Plaintiffs have received were simply a check dated January 27, 2025 for $351.72; a check dated August 30, 2024 for $422.77; a check dated May 23, 2025 for oil allegedly picked up on April 20, 2025; and a check dated September 25, 2025 for $344.87. The only information other than the amount that was contained on said checks was that it was on the account for C-L Purchasing, Inc and listed an alleged quantity of oil that was allegedly produced. There was no companion information to verify that oil was in fact picked up out of a tank located on the Plaintiffs' property or that it came from a well or wells located on the Plaintiffs' property.

57. Based upon the information and belief of the Plaintiffs' each of these checks have been remitted to them under fraudulent misrepresentation, because it is the belief of the Plaintiffs that such quantity of oil was not produced from their property, but instead was produced from some other property and the checks have been issued by the Defendant C-L Purchasing, Inc. to the Plaintiffs in an effort to portray that oil is being produced from their property so as to allow the Defendants to retain their operations on the Plaintiffs real estate, when in fact that the Defendants knew or should have known through the exercise of due diligence that the oil was not produced from the Plaintiffs' property, or in the alternative, the Defendants have over

stated the quantity of oil that was produced for fear that a lesser amount of royalty would jeopardize their ability to retain their rights under the 1938 oil and gas lease or the 2015 Development Agreement.

58. As a result of the above fraudulent misrepresentation, the Plaintiffs have been damaged in an amount which will exceed the minimum jurisdictional requirements of this Court.

WHEREFORE, the Plaintiffs Matthew Scott Centers and Garnett L. Centers respectfully requests the Court to grant the relief requested herein, their cost and attorney fees, and any and all other legal and equitable relief for which they might be entitled, and a jury trial on issues so triable.

Respectfully submitted this the 27th day of October, 2025

s/Kenneth A. Meredith, II_____
Kenneth A. Meredith, II
316 East Main Street
P.O. Box 194
Bowling Green, KY 42102-0194
Kenmeredithii@gmail.com
(270)781-6194
Attorney for the Plaintiffs Matthew Scott
Centers and Garnett L. Centers